Filed 5/29/13  In re Dayton J. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re DAYTON J., a Person Coming Under the Juvenile Court Law. | D062820 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518453A) |
| v. | |
| DUSTIN H., | |
| Defendant and Appellant; | |
| WILLIAM C. | |
| Defendant and Respondent. | |

APPEAL from orders of the Superior Court of San Diego County, Carol Isackson, Judge, and Richard J. Neely, Juvenile Court Referee.  Affirmed.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant Dustin H.

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Respondent William C.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Valerie N. Lankford, under appointment by the Court of Appeal, for Minor.

Dustin H. appeals juvenile court orders declaring William C. to be Dayton J.'s presumed father, ordering Dayton placed with William and terminating jurisdiction. Dustin contends the court erred by denying his request for paternity testing and the court misinterpreted the legal effect of a stipulation he executed with Dayton's mother, Amanda J., regarding paternity. He also argues he is Dayton's presumed father under Family Code section 7611, subdivision (c)[1] and the court incorrectly weighed the presumptions of section 7611, subdivision (d) to determine that William, rather than he, is Dayton's presumed father. We affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

Dayton was born in 2008. During his young life, he lived sometimes with Amanda and Dustin, sometimes with William, sometimes with William and Amanda, and at other times with the maternal grandparents. Both Dustin and William had cared for Dayton and each man held him out to be his son. William and Amanda's older son, Gage C., lived with William. Amanda and Dustin's child, K.H., was born in November 2011.

---

[1] Statutory references are to the Family Code unless otherwise specified.

2

On June 29, 2012, the San Diego County Health and Human Services Agency (the Agency) petitioned on behalf of three-year-old Dayton under Welfare and Institutions Code section 300, subdivision (b), alleging Dustin had taken Dayton from his maternal stepgrandmother without permission, drove away with Dayton in a car without proper safety restraints, was found to be in possession of methamphetamine, was arrested and pleaded guilty to child endangerment. A criminal protective order was entered barring contact between Dustin and Dayton. Protective orders in effect at the time of the incident had prohibited Dustin from having contact with Amanda because of domestic violence, but Dustin and Amanda had maintained contact, including living together at times. The court ordered Dayton detained in relative care. Amanda's whereabouts remained unknown during the dependency case.

At the jurisdictional hearing on July 31, the court found the allegations of the petition to be true. The court found Dustin and William both were Dayton's presumed fathers under section 7611, subdivision (d), and an evidentiary hearing was necessary to weigh their competing presumptions. The court denied Dustin's request for a paternity test, finding the results of the test would not necessarily rebut William's presumption under section 7611, subdivision (d) that he is the presumed father.

At the evidentiary hearing on paternity on August 17, Dustin testified he and Amanda were living together when Dayton was conceived, but when Amanda was a few months pregnant she moved to live with William. She did not inform Dustin when Dayton was born in 2008, but he saw him at the hospital and, a few weeks later, Amanda and Dayton began living with him. In 2009, Dustin and Amanda had a domestic violence

3

incident. Amanda and Dayton then lived with William, but after a few months returned to live with Dustin. Amanda later left again, then returned, but left again and kept Dayton from him. Dustin said he had petitioned for custody in October 2008, Amanda agreed for Dayton to have his last name and he was granted 50 percent custody. He and Amanda married in late 2009. Dustin testified that during the times Amanda and Dayton lived with him, he paid their expenses and treated Dayton as his son.

Dustin's mother testified Dustin had obtained 50 percent custody of Dayton, Dayton had spent significant time with Dustin and she considered Dayton to be her grandson. It was stipulated that if William's mother were to testify, she would say she also considered Dayton to be her grandson and a part of her family.

William testified he and Amanda had been in a relationship for several years, she had lived with him and he had supported her for most of her pregnancy with Dayton. He said he was at the hospital for Dayton's birth, and then Amanda and Dayton lived with him for 10 to 11 months, and he cared for Dayton and provided for him. He testified Amanda's behavior then became erratic and she sometimes left with Dayton. When Dayton was returned to him at times, he was in poor condition and behaved as if his life had had no structure. William said that in September 2010, Amanda gave him a letter of temporary guardianship allowing him to make educational and medical decisions for Dayton. William said he gave Dayton structure, took him to activities and provided medical care. He said he had attempted to establish paternity in family court, but had not completed the process.

The maternal stepgrandmother testified Dayton had lived with Amanda and William. She said William cared for Dayton, and in 2010 Amanda provided him with documentation so he could enroll Dayton in preschool. She said Dayton called William daddy. She said she believed Dayton had lived with Dustin only when Amanda was also in the home. She had investigated attaining guardianship of Dayton to protect him from Amanda's lifestyle and give him stability. She had no concerns about William's ability to parent Dayton.

After considering the evidence and argument by counsel, the court found William was Dayton's presumed father and entered a judgment of paternity. It struck the finding that Dustin was his presumed father. It found William's testimony was more credible than Dustin's testimony. It determined the weight of the evidence concerning the presumption of section 7611, subdivision (d) was in William's favor, that each man had received Dayton into his home and held him out as his own, but William had provided a higher quality of care and structure, while Dustin had used drugs and there had been referrals for child abuse and neglect while he was caring for Dayton.

At the disposition hearing, the court denied Dustin's renewed request for paternity testing. It declared Dayton a dependent child of the court, removed him from Amanda's custody, ordered him placed with William, terminated Dustin's visitation and terminated jurisdiction.

5

DISCUSSION

I

Dustin contends the court erred by not ordering a paternity test. He argues the results of testing might have strengthened his position if it had shown he is Dayton's biological father. He also asserts there is a compelling state interest to establish paternity for all children. He maintains that under section 7551 a party to a paternity action has the right to demand paternity testing if it would not delay the proceedings.

Section 7551 states in part:

> "In a civil action or proceeding in which paternity is a relevant fact, the court may upon its own initiative or upon suggestion made by or on behalf of any person who is involved, and shall upon motion of any party to the action or proceeding made at a time so as not to delay the proceedings unduly, order the mother, child, and alleged father to submit to genetic tests."

The court has discretion to evaluate claims of paternity and to determine that a man may be a presumed father even if he is not the biological father. (*In re Nicholas H.* (2002) 28 Cal.4th 56, 59.) "[B]iological paternity by a competing presumptive father does not necessarily defeat a nonbiological father's presumption of paternity." (*In re Kiana A.* (2001) 93 Cal.App.4th 1109, 1118.) The court may find that a presumed father who is not the biological father has a stronger relationship with the child than the biological father and thus the presumption that he is the presumed father may prevail. (See *Steven W. v. Matthew S.* (1995) 33 Cal.App.4th 1108, 1116-1117.)

Dustin first requested paternity testing on July 31, 2012. Paternity testing would have unnecessarily delayed the proceedings and the court explained it did not believe it

6

was justified or necessary. The court reasonably found paternity testing would not be particularly useful in determining whether Dustin's or William's presumption under section 7611, subdivision (d) should prevail. Instead, the court was able to determine from the testimony at the evidentiary hearing that the presumption under section 7611, subdivision (d) that William is Dayton's presumed father held greater weight than the presumption favoring Dustin. The court reasonably determined that finding Dustin is the biological father would not have rebutted the presumption that William is the presumed father. The court did not err by denying Dustin's request for paternity testing.

II

Dustin asserts the court misinterpreted the stipulation he and Amanda signed and a judicial officer approved. He argues he promptly acted to establish paternity when he learned of Dayton's birth; Amanda agreed Dayton would bear his last name and she would place his name on the birth certificate; and a court approved the resolution of the paternity action. He argues Amanda's agreeing to place his name on the birth certificate should be viewed as a judgment of paternity.

Assuming without deciding that Dustin has preserved this issue for appeal, we conclude he has not shown the stipulation he entered into with Amanda should be given the status of a voluntary declaration of paternity or a judgment of paternity. A voluntary declaration of paternity has numerous statutory requirements. It must be executed on a particular form and contain the parties' signatures and the name and birth date of the child. The mother must signify she has read and understands the written materials in the documents, including notice requirements and the father's constitutional rights associated

7

with a paternity declaration. In addition, the parents must be informed that by signing the declaration the father is voluntarily waiving his constitutional rights. The parents must be provided the required information orally as well as in writing. (§§ 7572 & 7574.) Also, the mother must signify that the man signing the voluntary declaration of paternity is the only possible father and she consents to the establishment of paternity. The father also must signify that he has read the written materials and understands he is waiving his rights and that he is the biological father and consents to the establishment of paternity. Further, a witness must sign that he or she has witnessed the mother and father sign the voluntary declaration of paternity. (§ 7574.) To establish its validity, the voluntary declaration of paternity must be filed with the Department of Child Support Services. (§ 7573.)

The stipulation to which Dustin and Amanda agreed does not contain any of these requirements. It was merely a two sentence agreement to add Dustin's name to the birth certificate. Amanda never followed through to add Dustin's name, and Dustin did not seek enforcement of what she had agreed to do. Also, Amanda could not truthfully say Dustin was Dayton's only possible father as required by section 7574.

In the same way, the stipulation is not the same as a judgment of paternity. A judgment of paternity determines the existence or nonexistence of a parent-child relationship and is determinative for all purposes except for actions under Penal Code section 270. (§ 7636.) Here, the judicial officer merely adopted the stipulation as an order and made no findings as to paternity or the parent-child relationship. The stipulation between Dustin and Amanda was only an agreement concerning Dustin's

8

name on the birth certificate, which Dustin did not seek to enforce. It does not qualify as a voluntary declaration of paternity or a judgment of paternity.

### III

Dustin claims he also is a presumed father under section 7611, subdivision (c). He argues because he married Amanda after Dayton's birth, the fact that he agreed to have his name on the birth certificate is critical to deciding that he, rather than William, is the presumed father.

Section 7611, subdivision (c) states in part that a man is a presumed father when "[a]fter the child's birth, he and the child's natural mother have married . . . and either of the following is true: (1) With his consent, he is named as the child's father on the birth certificate. . . ."

However, Dustin's name does not appear on Dayton's birth certificate. Moreover, even if he were considered a presumed father under section 7611, subdivision (c), the court would nonetheless be required to weigh whether Dustin's or William's claims of being the presumed father carried greater weight. (§ 7612, subd. (b).) A finding that Dustin is a presumed father under section 7611, subdivision (c) would not mean that his claim would automatically prevail.

### IV

Dustin maintains because he and not William took significant legal steps to protect his status as Dayton's presumed father, his claim is automatically superior to William's. This argument is without merit. William testified he also had gone to court to attempt to establish paternity. Moreover, the fact that Dustin had made efforts to establish paternity

9

is only one of the factors the court was required to consider when it weighed Dustin's and William's competing claims to being Dayton's presumed father.

If more than one person qualifies as a presumed father under the criteria of section 7611, section 7612, subdivision (b) directs the court to weigh the conflicting presumptions. " 'If two or more presumptions arise under Section 7611 which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls.' " (*In re Jesusa V.* (2004) 32 Cal.4th 588, 603.) A court's determination, after it has weighed conflicting presumptions that arise under section 7611, is reviewed under an abuse of discretion standard. (*Id.* at pp. 606-607.) A determination "committed to the sound discretion of the juvenile court . . . should not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " (*Id.* at pp. 318-319.)

The evidence showed William had maintained a stable home for Dayton in contrast to the unstable life Dayton led when he was in the care of Amanda and Dustin. William cared for Dayton, provided him with necessities of life, played with him and gave him opportunities to be involved in activities. He supported Amanda when she was pregnant with Dayton and purchased supplies in anticipation of his birth. He continued to care for Dayton even during times when Amanda was not in the home. Dayton called him his "daddy" and wanted to be with him. In 2010, Amanda gave William a letter of

10

temporary guardianship so he could make medical and educational decisions for Dayton in her absence.

Although Dustin also took Dayton into his home and held him out to be his son, he did not provide stability and structure. Dustin's relationship with Amanda included domestic violence, restraining orders and allegations of drug use. There was evidence Dayton stayed with Dustin only when Amanda was also there. If she left, she took Dayton with her. Dayton appeared to be neglected when in Amanda and Dustin's care, and when he was returned to William after spending time with them, he was ill and had unusual behaviors. Also, the Agency became involved when Dustin took him out of the maternal stepgrandmother's care without permission.

We hold that when we consider all of the evidence together, we conclude the court did not abuse its discretion by determining the presumption of section 7611, subdivision (d) that William is Dayton's presumed father weighed more heavily than the presumption in favor of Dustin.

DISPOSITION

The orders are affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

11